**WAYNESVILLE SECURITY BANK,**
Plaintiff-Respondent,

v.

**STUYVESANT INSURANCE COMPANY,**
Defendant-Appellant.

No. 9329.

Missouri Court of Appeals,
Springfield District.

Aug. 30, 1973.

Charles T. Smallwood, Northern, Williams & Smallwood, Rolla, for defendant appellant.

Arthur B. Cohn, Waynesville, for plaintiff respondent.

HOGAN, Judge.

Plaintiff Waynesville Security Bank, mortgagee of a "mobile home" owned by one Roy Randolph, brought this action for breach of contract as loss payee in a fire insurance policy issued by defendant Stuyvesant Insurance Company. The loss occurred after the policy had expired; the breach of contract alleged was failure to give the loss payee notice of the expiration of the policy and an opportunity to renew it. The cause was tried to the court on stipulated facts. The court found for the plaintiff and the defendant appeals. Our duty is to determine whether the trial court's judgment represents the proper legal conclusion on the facts stipulated. Jewel Tea Co. v. City of Carthage, 257 Mo. 383, 388, 165 S.W. 743, 744 (1914); Bartlett v. Nat'l Fin. Corp., 228 Mo.App. 789, 799, 73 S.W.2d 451, 457[11] (1934).

From the stipulation of fact, it appears that the policy sued on is a fire insurance policy issued to Mr. Randolph on December 9, 1969. It covers loss or damage to a trailer, or "mobile home", by fire and other specified perils. The policy was endorsed to cover a different trailer in September 1970, but that endorsement is not material to the issues here presented. The term of the policy is typed clearly on its face. The policy contains no provision requiring notice of expiration on the expiration date. The loss payable clause, added by endorsement when the policy was amended, is a "standard" or "union" clause. It provides that the plaintiff's interest "shall not be invalidated by any act or neglect of the . . . Mortgagor or Owner", and further states that "in case the . . .

Mortgagor or Owner shall neglect to pay any premium due under [the] policy the Lienholder shall, on demand, pay the same." The insurer reserves the right to cancel the policy upon notice to the lienholder, but the loss payable clause makes no provision for notice of the expiration of the policy, does not mention renewal, and concludes with the provision that "[n]othing herein contained shall be held to vary, alter, waive or *extend* any of the terms, conditions, agreements or limitations of such policy, other than as above stated." (Emphasis added.)

It is stipulated that the policy expired on December 9, 1970, and that it was not thereafter renewed or reinstated. It is further stipulated that no notice of the expiration of the policy was given to the insured or to the plaintiff. The trailer was completely destroyed by fire on December 13, 1970, after the policy had expired. In this court, the defendant claims it was under no obligation to notify the loss payee of the expiration of the policy or afford it an opportunity to renew. The plaintiff claims that the loss payable clause is an independent contract binding the defendant to give notice of the expiration or cancellation of the policy for nonpayment of the premium. Plaintiff emphasizes that the loss payable clause insulates it from the consequences of "any act or neglect of the . . . Mortgagor or Owner", and further maintains that the provision giving it the right to pay any premium due is ambiguous to the extent that it could reasonably be interpreted to require notice of expiration or the insurer's intention not to renew the policy.

■ Plaintiff's arguments are cleverly contrived but unsound. True, a standard or union mortgage clause operates as an independent contract of insurance between the mortgagee and the insurer which cannot be defeated by a breach of the conditions of the policy on the part of the mortgagor or solely by his act, General Motors Accept. Corp. v. Western Fire Ins. Co., 457

S.W.2d 234, 236 (Mo.App.1970), but because the loss payable clause is endorsed subject to the "terms, conditions, agreements or limitations" of the policy, the insurer's obligation to the plaintiff is no broader than its obligation to the insured, except as specifically stated in the endorsement. Ford v. Iowa State Ins. Co., 317 Mo. 1144, 1153–1156, 298 S.W. 741, 745–746, 56 A.L.R. 842, 848–850 (1927); General Motors Accept. Corp. v. Western Fire Ins. Co., supra, 457 S.W.2d at 236–237[1][2]; 43 Am.Jur.2d Insurance § 770, pp. 754–755 (1969).

■ Plaintiff tacitly concedes as much, but asserts that by the terms of the endorsement, it was entitled to notice of cancellation of the policy for nonpayment of the premium. The difficulty with this argument is, in the first place, that the policy was not cancelled during its term. This policy was not a continuing policy, contingent upon payment of premiums as they became due periodically, as were the policies construed in Mitchell v. Farmers Ins. Exchange, 396 S.W.2d 647, 650[1] (Mo.1965), and in M.F.A. Mut. Ins. Co. v. Quinn, 259 S.W.2d 854, 859[5] (Mo.App. 1953). The policy period was "12 Months" from "12/9/69" to "12/9/70" with no mention of renewal or of any grace or extension period. This policy was not "cancelled". Plaintiff, in its brief, treats the terms "cancellation" and "termination" as synonyms, but they are not. "Cancellation," as used in insurance law, means termination of a policy prior to the expiration of the policy period by act of one or all of the parties; "termination" refers to the expiration of the policy by lapse of the policy period. Beha v. Breger, 130 Misc. 235, 223 N.Y.S. 726, 731[7] (1927); U. S. F. & G. Co. v. Security F. & I. Co., 248 S.C. 307, 149 S.E.2d 647, 650[8] (1966). In this case, the policy "terminated" or "expired" by lapse of the policy period. Plaintiff's argument that it did not receive notice of cancellation is therefore wholly without merit.

It is further argued by the plaintiff that the provision in the loss payable clause providing that plaintiff's interest shall not be invalidated by any act or neglect of the mortgagor, and the provision that should the mortgagor neglect to pay any premium due, the mortgagee shall, on demand, pay the premium, are ambiguous and create an inference that the mortgagee will be given notice of the expiration of the policy. This argument is strained and tenuous. The standard or union loss payable clause protects the mortgagee's interest against the mortgator's breach of the *conditions of the policy,* General Motors Accept. Corp. v. Western Fire Ins. Co., supra, 457 S.W.2d at 236 (emphasis added), but here there is no provision in the policy *requiring the insured to renew it,* and the disconnected sentence giving the plaintiff, as mortgagee, the right to pay any premium due if the mortgagor fails to do so is but declarative of the general law. See 55 Am.Jur.2d Mortgages § 268, p. 359 (1971). We do not perceive the ambiguity contended for, and we are not authorized to enlarge the policy by judicial construction. Universal Towing Co. v. Hartford Fire Ins. Co., 421 F.2d 379, 381[4] (8th Cir. 1970).

This brings us to the meritorious question presented: Was plaintiff, as an insured under an independent contract incorporating the policy provisions, entitled *to notice of the expiration of the policy and an opportunity to renew it,* even though no policy provision required such notice? We think not.

We are aware that in some jurisdictions, statutes have been enacted which contemplate special consideration of the interests of property owners who are exposed to a high degree of risk but are unable to obtain fire insurance through ordinary channels. Thus, it may be that fire insurance policies issued under the so-called FAIR plans require notice of nonrenewal, so the insured may have the opportunity to obtain protection elsewhere. See 12 U.S.C.A. § 1749bbb–3(b)(9), and § 379.845, para. 2, RSMo 1969 V.A.M.S. Other statutes contemplate continuous coverage of particular hazards as a matter of public protection, and therefore require some affirmative indication of the insurer's intention not to renew. See, for example, the statute requiring notice of intention not to renew automobile liability policies construed in Shore v. Coronet Ins. Co., 7 Ill.App.3d 782, 288 N.E.2d 887, 889[1–4] (1972). In this case, however, there is no statute requiring notice of the expiration of the policy or notice of nonrenewal. There are also cases in which the insurer's custom or course of dealing with a particular insured, such as renewing the policy without request or accepting renewal premiums late without protest have been held to estop the insurer from denying renewal, Annot., 85 A.L.R.2d 1410, 1421–1423, 1424–1432, §§ 9, 12 (1962), but there is no indication here of any such custom or course of dealing. What we are concerned with in this case is the inherent duty of an insurer to give notice of the expiration of a policy in the absence of any policy provision or statute requiring such notice. No question of estoppel or possible waiver is involved.

Counsel frankly admit that they have found no controlling precedent in the decisions of our courts. Neither have we. In Zeiger v. Farmers' & Laborers' Coop. Ins. Ass'n, 358 Mo. 353, 214 S.W.2d 426 (1948), the loss payable clause required the insurer to give the mortgagee notice of the mortgagor's failure to pay any premium due, and if the mortgagee desired to continue the insurance in force it was to pay the premium within ten days after such notice. The insurer's failure to give the mortgagee notice was held to be a breach of contract under the loss payable clause, Zeiger v. Farmers' & Laborers' Coop. Ins. Ass'n, supra, 358 Mo. at 362–363, 214 S.W.2d at 429[4], but no such requirement of notice appears in this loss payable endorsement. Billings v. Independent Mut. Fire Ins. Co., 251 S.W.2d 393 (Mo.App. 1952) involved lapse for nonpayment of premium rather than lapse because of expi-

ration of the policy period, and is not authority here. We have been obliged, therefore, to look to decisions from other jurisdictions.

In Kimball v. Clinton County New Patrons Fire Relief Ass'n, 23 App.Div.2d 519, 255 N.Y.S.2d 366 (1965), the plaintiff's buildings were destroyed by fire some nine and one-half months after the stated expiration date of the policy. Plaintiff, who was the named insured, charged the defendant with negligence in failing to give notice of the expiration date of the policy. The court noted that the policy was not cancelled during its term; it contained no provision requiring notice of its expiration at the expiration date, which appeared on the face of the policy, and that there was no requirement of any notice of any assessment not applicable during its term. Rejecting plaintiff's contention that the defendant was estopped to deny renewal, the court held, 255 N.Y.S.2d at 368, that " ' [t]he terms of the policy were always within the knowledge of the plaintiff, and if he failed to remember that the policy expired at a certain time before the fire, it was his own negligence, and not defendant's which prevented plaintiff from renewing his policy.' "

In Kapahua v. Hawaiian Ins. & Guar. Co., 50 Haw. 644, 447 P.2d 669 (1968), plaintiff sued the insurer and its agent on the theory that the defendants were negligent in failing to notify her of the expiration date of her policy or to renew her policy automatically. Plaintiff based her case on an implied contractual duty, arising out of trade custom, to notify her that her policy had expired, or to renew it without request. The primary question before the court was one of statutory interpretation, but the court came to the conclusion that the applicable statute merely restated the general insurance law without substantial deviation, and indicated that no duty rested upon an insurer to give an insured notice of the expiration date of his policy, in the absence of a policy provision or statute requiring such notice or unless the insurer

had by custom or course of dealing with the particular insured, led him to believe such notice would be given.

Perhaps the most convincing reason why the insurer has no such inherent obligation apart from a policy provision or statute requiring notice of the expiration of the policy is stated in Norkin v. United States Fire Ins. Co., 237 Cal.App.2d 435, 47 Cal. Rptr. 15 (1965). There the plaintiff sued in tort, alleging among other things that the defendant insurer and several "Doe" defendants had violated a California statute prohibiting " ' [t]he suppression of a fact, by one bound to disclose it' " in failing to give plaintiff notice of its intention not to renew plaintiff's automobile liability policy. The court noted that there was no allegation of an express promise to renew, and in sustaining a demurrer to the petition, held, 47 Cal. Rptr. at 17 [4]:

"[P]laintiff cites no authority, and we know of none, which requires that an insurance company, a private business, must continue to contract with an insured after the original policy has, by its terms, expired. There being no such obligation, the insurance company here was under no duty to disclose its intentions to plaintiff, assuming that they existed."

These decisions are but illustrative, of course, but they do demonstrate the general principle applicable to this case. No duty rests upon an insurer to notify the insured of the expiration date of his policy, or of its intention not to renew the policy, unless such notice is required by agreement of the parties or by statute, or unless the insurer has by custom or course of dealing with the particular insured led him to believe such notice would be given. Because in this case the duty owed to the plaintiff was no greater than the duty owed to the insured, so far as notice of the expiration of the policy is concerned, defendant was not required to notify the plaintiff that the policy would expire by lapse of the policy period on December 9,

1970. With deference to the trial court, whose judgment we respect, we believe the conclusion drawn from the stipulated facts was clearly erroneous.

Accordingly, the judgment is reversed, with directions to enter a judgment for the defendant.

TITUS, C. J., BILLINGS, J., and GREENE, Special Judge, concur.

STONE, J., not sitting.